UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**RODNEY D. COX**,                                         Civil Case No. 3:11-CV-01030-KI

              Plaintiff,

                                                          OPINION AND ORDER

              v.

**MICHAEL J. ASTRUE**,
Commissioner, Social Security Administration,

              Defendant.


       Merrill Schneider
       Schneider Caver Law Offices
       P. O. Box 14490
       Portland, Oregon  97293

              Attorney for Plaintiff

       S. Amanda Marshall
       United States Attorney
       District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

David Morado
Regional Chief Counsel
Mary F. Lin
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
1301 Young Street, Suite A-702
Dallas, Texas  75202-5433

       Attorneys for Defendant

KING, Judge:

Plaintiff Rodney D. Cox brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's 2008 and 2009 applications for disability insurance benefits

("DIB") and supplemental security income benefits ("SSI").  I affirm the decision of the

Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the Administrative Law Judge ("ALJ").  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.  If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past.  If the claimant is able

to perform work she performed in the past, the ALJ makes a finding of "not disabled" and

disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the

fifth and final step to determine if the claimant can perform other work in the national economy

in light of his age, education, and work experience.  The burden shifts to the Commissioner to

show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.

The claimant is entitled to disability benefits only if he is unable to perform other work.

20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2004) (internal citations omitted).

**THE ALJ'S DECISION**

After reviewing the medical record, the ALJ found that Cox had severe impairments of asthma, a dysthymic disorder, and an anxiety disorder. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ found that Cox had the residual functional capacity to perform medium work, that he should avoid several environmental irritants, and that he was limited to unskilled work with little public contact. Based on testimony from a vocational expert, the ALJ found Cox had the residual functional capacity to work as a sandwich maker, a patient transporter, or an electronic assembler, and thus was not disabled as defined by the Act.

**FACTS**

Cox claims to have been disabled since September 25, 1987 due to asthma, depression, anxiety, degenerative disc disease, a learning disability, hepatitis C infection, and obstructive sleep apnea. Cox was 38 years old on his alleged disability onset date and 60 years old at the time of the ALJ's decision. Cox completed the tenth grade, has no GED, and has worked several industrial jobs, with his last successful job in a lumber mill making shakes. The mill work exposed Cox to red cedar, which caused him to develop asthma. The mill did not provide Cox with protective gear.

Cox has a history of alcoholism and drug abuse but he quit using these substances in 1998. He also was incarcerated as a juvenile and then for about five years as an adult prior to 1986.

Cox testified it is hard for him to leave his home because exposure to fumes and dust causes his chest to tighten up.  Asthma problems trigger panic attacks in Cox.  He explained his difficulties reading and learning new things.  He cannot get along with people because he gets irritable and loses his temper.  Cox has some lower back pain resulting from a 1976 on-the-job accident which kept him off work for two years.  He also complained of fatigue and the inability to walk or stand for very long periods without developing shortness of breath.

## DISCUSSION

I.    Rejection of Cox's Subjective Symptom Testimony

The ALJ found that Cox's subjective symptom testimony was not credible to the extent it was inconsistent with the residual functional capacity assessment.  Cox argues the ALJ did not give clear and convincing reasons to discredit Cox's testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination, and the ALJ

must rely on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based

on affirmative evidence thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v.

Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

      I address the ALJ's reasons in turn.

      Cox claims the ALJ improperly rejected Cox's testimony on the basis that it was not fully

supported by medical source opinions in the record.  Cox argues the opinions of Dr. Patton,  Dr.

Keppel, Dr. Montanaro, and Dr. Burns support Cox's subjective testimony.

      The doctors uniformly agree that Cox suffers from asthma, likely brought on by exposure

to red cedar.  But their treatment notes do not support a finding that Cox is completely disabled

from working in all environmental conditions.  On September 27, 1988, Dr. Montanaro, an

examining allergist, concluded Cox was "certainly employable," but had to work in a relatively

clean work environment.  Tr. 487.  On August 25, 1989, Dr. Keppel, the treating pulmonologist,

thought Cox should begin job retraining.  On November 20, 1989, Dr. Keppel stated that Cox

was not totally disabled but was quite limited in the kind of environment in which he could work.

Dr. Keppel was also concerned that Cox's mental condition, in particular his inner anger towards

his asthma, had to be considered.  I will discuss the ALJ's treatment of Dr. Burns' opinion of

Cox's mental state below.

      Although the ALJ cannot reject subjective testimony solely because it was not fully

corroborated by objective medical evidence, medical evidence is still a relevant factor in

determining the severity of the pain and its disabling effects.  Rollins v. Massanari, 261 F.3d 853,

857 (9th Cir. 2001).  The doctors do not put limitations on Cox which preclude all employment.

Page 7 - OPINION AND ORDER

Thus, the ALJ's reason is a clear and convincing one supported by substantial evidence in the record.

The ALJ also noted the inconsistency in Cox and his wife testifying that Cox's involvement in a newspaper distributorship was minimal in 1993 and after, even though he earned $11,241 in 1993 and reported to Kaiser doctors in January 1995, April 2008, and July 2008 that he was working at the distributorship. The Coxes claimed he worked the job less than a month before his wife took over completely, other than him accompanying her occasionally to deliver late papers or pick up supplies.

Cox contends the ALJ's reasoning based on Cox's work at the newspaper distributorship is improper, particularly in light of the ALJ's conclusion that Cox did not engage in substantial gainful activity by working there.

The ALJ gave Cox the benefit of the doubt in concluding that Cox did not engage in substantial gainful activity at the distributorship. Cox, however, made inconsistent statements to Kaiser doctors. Additionally, he did not attempt to correct his wife's wages being included in his Social Security work history. These are all legitimate reasons to discredit Cox's testimony.

The ALJ stated that Cox's medical records suggest his May 2009 SSI application was precipitated by financial difficulties after his wife's job was eliminated. On September 3, 2009, Dr. Keppel noted the loss of his wife's job had caused a financial constraint for Cox.

Cox argues this is an improper reason to reject his testimony. He maintains that a later application for SSI benefits should not be a reason to deny an earlier application for DIB benefits.

The Commissioner contends Cox reported stopping work for reasons other than health impairments, which is a legitimate reason to discredit testimony. This argument, however, does

Page 8 - OPINION AND ORDER

not address the ALJ's reason based on Cox's SSI application. I am unaware of any regulation requiring a person to apply for disability as soon as he becomes disabled. Speculation concerning Cox's motivation to file for SSI benefits is not a clear and convincing reason to discredit Cox's testimony.

The ALJ reasoned the Kaiser medical records refer to activities that are inconsistent with Cox's claim of total disability. According to Cox, helping with household chores, something which caused Cox fatigue and physical complaints, is not conclusive evidence of non-disability.

Daily activities which are inconsistent with a claimant's stated symptoms are a legitimate reason for an ALJ to discount a claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Cox claimed shortness of breath after any amount of activity, such as walking a block. In contrast, Cox reported to several doctors that he does yard work; does the dishes; vacuums; helps with meals; strained his back after moving a washer and dryer; cut his leg when he fell off a ladder; and hurt his shoulder after working on a fence, digging up roots, and hammering. The evidence supports the ALJ's reasoning that Cox's daily activities are inconsistent with his subjective complaints.

The ALJ stated that Cox's previous history of alcohol and drug abuse, as well as his incarcerations, detract from his credibility about the inability to work. The ALJ believed these factors provided some information as to Cox's sketchy work history and why he did not seek other work after leaving the mill job because of asthma. Cox argues the ALJ's finding is based on mere speculation.

The Commissioner contends that relying on substance abuse issues and criminal history is an ordinary technique of credibility evaluation. The Commissioner is correct. Id. (the ALJ may

consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for

lying, prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid").  Moreover, the ALJ was not speculating about Cox's

past conduct, which Cox had explained during the hearing, and the ALJ commended Cox for his

continued sobriety.  Cox's alleged date of disability is more than ten years prior to his sobriety.

The ALJ did not err in relying on these facts in his credibility determination.

        The ALJ noted that Cox did not follow through with psychotherapy.  When Cox

complained on May 12, 2009 that his depression was not responding to the current dosage of

Prozac, a Kaiser doctor referred him to mental health psychotherapy and increased the Prozac

dosage.  Cox did not follow through with the psychotherapy.  An unexplained failure to follow a

prescribed course of treatment is a credibility factor.  See Tommasetti, 533 F.3d at 1039.

        Cox argues the record does not support the ALJ's conclusion that his depression

improved with Prozac.  I agree the ALJ was incorrect when he stated Cox testified at the hearing

that Prozac improved his symptoms.  The implication from the medical evidence, however, is

that the Prozac resolved the depression because Cox did not bring the matter up with his doctors

again.  Cox testified to his irritability but the ALJ properly discounted his subjective symptom

testimony.

        In summary, the ALJ gave one improper reason to discount Cox's credibility and several

valid reasons.  The fact that the ALJ improperly considered some reasons for finding plaintiff's

credibility undermined does not mean the ALJ's entire credibility assessment is improper.  If

there is substantial evidence supporting the ALJ's conclusion on credibility and "the error does

not negate the validity of the ALJ's ultimate [credibility] conclusion, the error is harmless."

Page 10 - OPINION AND ORDER

Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation omitted).

The single error does not completely undermine the ALJ's credibility determination.  The ALJ gave several clear and convincing reasons, supported by substantial evidence, that Cox was not entirely credible.

II.    Opinions of Psychologists

Cox argues the ALJ failed to give legitimate and specific reasons when he rejected the opinions of two psychologists, Dr. Burns and Dr. Powell.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.

Dr. Burns' and Dr. Powell's opinions are contradicted by Dr. Maletzky's August 29, 1990 opinion that Cox needed to be trained for a job that was performed in a clean environment.  Thus, the ALJ only needs to provide specific and legitimate reasons supported by substantial evidence in the record to reject the opinions.

Page 11 - OPINION AND ORDER

A.    Dr. Caleb Burns, Ph.D.

Dr. Burns treated Cox from mid-1989 through June 1991.  On September 19, 1989, Dr. Burns wrote a letter concerning Cox's workers' compensation claim.  He explained Cox was not medically stationary from a psychological perspective, and that he "clearly continues to suffer from incapacitating symptoms of depression and anxiety.  While it is hoped these symptoms will remit, they are in sufficient strength to render him unemployable at this time."  Tr. 351.

The ALJ reasoned Dr. Burns' treatment notes indicate Cox improved after Dr. Burns gave his opinion.  Cox was receiving psychotherapy from Dr. Burns and medication from a psychiatrist, Dr. Maletzky.  The ALJ also relied on Dr. Maletzky's opinion, Cox's minimal mental health treatment at Kaiser from 1995 on, and Cox's failure to follow through with psychotherapy.

Cox argues the ALJ should give less weight to Dr. Maletzky because he only monitored Cox's medications and provided relaxation and breathing exercises, and thus had less knowledge about Cox's current functioning.  Moreover, even though Dr. Maletzky disagreed with the specific diagnosis, he recommended Cox continue to receive psychotherapy sessions with Dr. Burns.  Cox believes this recommendation supports Dr. Burns' opinion.

On August 29, 1990, Dr. Maletzky diagnosed Cox with a major depressive disorder secondary to his industrial toxic exposure and subsequent physical problems.  On January 14, 1991, Dr. Maletzky stated he did not believe "there is incontrovertible evidence of a major depressive disorder.  Indeed, I see his mood as reactive by and large . . . ."  Tr. 468.  Dr. Maletzky saw no reason to continue to see Cox but recommended that Cox continue treatment with Dr. Caleb.

Although Dr. Burns did see Cox many more times than Dr. Maletzky saw him, the ALJ is not precluded from accepting Dr. Maletzky's opinion for this reason. Indeed, an ALJ can even adopt the opinion of an examining physician who typically only sees the claimant a single time.

Cox disputes the ALJ's conclusion that he improved after September 1989 due to psychotherapy and medication. He contends he remained incapacitated from depression and anxiety for at least six years after he received psychological counseling from Dr. Burns.

The Commissioner argues Dr. Burns' progress notes, in their entirety, show that Cox's mental status improved during treatment.

Dr. Burns' treatment notes show that in over one third of the sessions, particularly during the last three months of treatment, Cox was doing fairly well or was improved on the day of the appointment. On other days, Cox was having greater difficulties with anxiety. I would not characterize this as a contradiction between the doctor's opinion and the doctor's own clinical notes, as the Commissioner suggests. Nevertheless, a fair reading of the treatment notes does show that Cox improved from two years of treatment.

Equally important, I find no complaint of psychological symptoms in the Kaiser records beginning in 1995 until a visit on August 21, 2008, in which Cox complained of fatigue, irritability, and general malaise. The doctor prescribed Prozac. There is no evidence of mental health treatment in the intervening thirteen years, even though Cox received regular medical care for other problems. The ALJ did not err in his analysis.

Cox claims his failure to follow through with psychotherapy after a May 2009 diagnosis of moderate major depression is not a legitimate reason to reject Dr. Burns' opinion. The ALJ

did not use this as a reason to reject Dr. Burns' opinion, however. The ALJ was just continuing his discussion of the evidence from various sources concerning Cox's mental health.

All in all, the ALJ gave several specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Burns' opinion that Cox was unemployable.

B.    Dr. James Powell, Psy.D.

Dr. Powell performed a psychological examination of Cox on November 6, 2009 and diagnosed Cox with major depressive disorder, recurrent, moderate and assessed a current GAF of 45.[1] Dr. Powell found Cox had a marked level of impairment in socialization, a marked level of impairment in his ability to manage activities of daily living, and a moderate level of impairment with regard to sustained concentration, persistence, and pace. He thought Cox would need at least twelve months of rehabilitation to be able to maintain employment, and that the prognosis for Cox being able to maintain employment in the future was "rather poor at this time." Tr. 155.

Cox generally contends the ALJ did not provide legitimate reasons to disregard Dr. Powell's opinion. Cox claims the ALJ would have found him disabled under 12.04 of the Listing of Impairments if the ALJ had given proper weight to Dr. Powell's opinion.

Turning to the ALJ's specific reasons, Cox disputes the ALJ's assertion that little objective testing was performed. Cox notes that Dr. Powell administered a mental status examination and could observe abnormalities of behavior, mood, and memory.

_____

[1] A GAF of 45 means serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

Dr. Powell explained that he administered a psychodiagnostic interview and did not administer any standardized psychological tests.  Many such tests are available; for example, Dr. Burns administered the Minnesota Multiphasic Personality Inventory.  This is a legitimate reason to reject Dr. Powell's opinion.

The ALJ noted Dr. Powell only reviewed the more recent Kaiser treatment records. Cox argues this is not a problem because Dr. Powell's conclusions are similar to Dr. Burns's opinions during his treatment of Cox from 1989 to 1991.

I do not understand Cox's argument.  Dr. Powell cannot be informed by records if he did not review them.  The fact that two opinions are reasonably consistent does not excuse a failure to review other available records.  When evaluating a medical opinion, whether of an examining or nonexamining source, an ALJ considers the "extent to which an acceptable medical source is familiar with the other information in your case record." 20 C.F.R. § 1527(c)(6).  Thus, failure to review all records is a legitimate reason to reject a medical opinion.

Cox disputes the ALJ's conclusion that Dr. Powell simply adopted all of Cox's subjective statements without independent verification.  According to Cox, Dr. Powell noted the following pieces of objective information which corroborate Cox's subjective statements:  (1) a May 2009 diagnosis of depression, moderate, single episode resulted in Cox taking Prozac at the time of the examination; (2) Cox's speech lacked organization and was rather vague; and (3) Cox's affect was animated but often with an undercurrent of irritability and anger.  I note Dr. Powell also reported the results of a mini-mental examination.

The Commissioner contends the ALJ's conclusion is reasonable considering Dr. Powell's admission that he did not administer any standardized testing and he only reviewed Kaiser

records, which show very little mental health treatment.  Dr. Powell did rely significantly on

Cox's report of his symptoms, namely that he feels like he is getting nowhere, that he is grumpy,

that he is not suicidal but wishes he were dead, that he wishes he could read and spell better, that

he wishes he could provide better for his family, and that he has no hope for the future.  A

physician's opinion of disability may be rejected if it is "based to a large extent on a claimant's

self-reports that have been properly discounted as incredible."  Tommasetti, 533 F.3d at 1041.

The ALJ properly discounted Cox's credibility; thus, it is legitimate for the ALJ to reject a

doctor's opinion based in large part on Cox's subjective statements.

Cox also disputes the ALJ's assertion that the record indicates Cox is fairly active, even

though Dr. Powell accepted Cox's claim to have little interest in hobbies.  Cox contrasts the idea

of a hobby, which is enjoyed by the participant, with helping out around the house.

The Commissioner argues Cox's contention obscures the fact that his reported

activities–whether they are hobbies or chores–are inconsistent with both his claim of total

disability and Dr. Powell's opinion that Cox had marked limitation in his activities of daily

living.

I agree with the Commissioner.  As discussed above, Cox handles many chores around

the house, some of which involve heavy labor.  Whether the chores are enjoyable or not, they

indicate that Cox is not as impaired in his activities of daily living as Dr. Powell opined.  The

ALJ did not err in giving this reason.

The ALJ noted Cox told Dr. Powell that his age, physical problems, and reading

limitations prevented him from working.  Cox notes he also reported to Dr Powell that being

tired prevented him from working, as well as a depressed mood, increased irritability, episodes of

tirades without much provocation, loss of interest in activities, and little energy.  Thus, Cox

argues there is no evidence supporting the ALJ's assertion that he denied depression as a reason

he could not work.

The Commissioner falls back on the argument that Dr. Powell accepted Cox's subjective

complaints but the ALJ properly rejected them.  I agree with the Commissioner and make a few

additional points.  Cox listed age as inhibiting his ability to work, but age is not an impairment.

Moreover, Cox was only 38 years old when he claims to have become disabled.  Cox also

considers his reading limitations as inhibiting his ability to work.  His learning disability is an

impairment which the ALJ addressed when he limited Cox to unskilled work.  Whether there are

jobs available which meet this limitation is a question for the vocational expert.  It is doubtful

that Cox is aware of job possibilities beyond areas in which he has prior experience.

Dr. Powell found Cox is markedly limited in the activities of daily living and social

functioning.  The ALJ concluded this is inconsistent with and not supported by substantial

evidence.  Cox disputes the ALJ's reasoning and notes that a marked level of impairment is not

defined by the specific number of activities which are impaired but by the nature and overall

degree of interference with a person's functioning.  Cox claims his lack of leisure activities, his

constant fatigue, his inability to be away from home for any length of time, and his lack of

friends outside the family are indicative of a marked level of impairment.

I again note the ALJ properly discredited Cox's subjective symptom testimony.  I do

agree that there is no evidence Cox spends much time away from home or with friends outside

his family.  Dr. Powell's opinion is inconsistent with the improvement shown in Dr. Burns'

treatment notes.  It is also inconsistent with the very minimal mental health care Cox sought or

received after leaving Dr. Burns' care in 1991.  The ALJ did not err in concluding that these findings by Dr. Powell were inconsistent and not supported by substantial evidence.

The ALJ rejected Dr. Powell's opinion, in part, on the basis that he included limitations associated with Cox's physical condition in reaching conclusions about limitations resulting from mental conditions.  Cox claims this is an improper reason and argues Dr. Powell has expertise in assessing GAF scores, which include both physical and mental limitations.

A GAF score, or the Global Assessment of Functioning, is a numeric measure of symptoms and functional level.  "Because the final GAF rating always reflects the worse of the two the score does not reflect the clinician's opinion of functional capacity."  Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) (internal quotation omitted).  Dr. Powell did discuss some of Cox's physical impairments as barriers to employment.  Although he is not prohibited in considering physical impairments when assessing Cox's ability to function, he is not a specialist outside his expertise as a psychologist.  This is a legitimate reason to discount his opinion. Holahan, 246 F.3d at 1202 (more weight is given to the opinion of a specialist concerning matters in his specialty than to opinion of nonspecialist).

In sum, the ALJ gave several specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Powell's opinion.

III.    Treatment of Non-Severe Impairments

Cox contends the ALJ improperly considered two impairments as non-severe.

The ALJ can find an impairment or combination of impairments non-severe "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (internal

Page 18 - OPINION AND ORDER

quotation omitted).  The failure to list an impairment as a severe impairment is a harmless error if, in determining the claimant's residual functional capacity, the ALJ considers any limitations caused by the impairment.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

A.    Low Back Pain

Cox contends the ALJ erred in failing to find that his low back pain is a severe impairment.  He claims the evidence demonstrates his back pain has more than a minimal effect on his ability to perform basic work tasks.  Cox claims he suffered from back pain for more than twelve consecutive months before the expiration of his date last insured, and that the ALJ erred by not ordering an X-ray of Cox's lumbar spine.

The Commissioner argues that although Cox occasionally complained of back pain, he received no treatment and was given no limitations by his treating physicians.

Although Cox had significant back problems when he was injured at work in 1976, there is no evidence of back complaints or treatment except for the few times Cox strained his back doing very physical labor, such as moving a washer and dryer on January 18, 2010.  The only treatment from Kaiser was a handout that explained home remedies such as ice and stretching.  None of Cox's physicians have put any limits on the use of his back.  The medical records establish that low back pain has no more than a minimal effect on Cox's ability to work.  Furthermore, a 2010 X-ray of Cox's spine gives little or no information on the state of his spine in 1988, his date last insured.  Consequently, the ALJ did not err by not considering the low back pain as a severe impairment.

B.      Learning Disability

Even though Cox does not argue his learning disability is a severe impairment, he argues

the ALJ erred in failing to include Cox's reading limitations in the residual functional capacity.

The Commissioner contends the ALJ's limitation to unskilled work is sufficient because

Cox presents an incomplete picture of his learning abilities.

The ALJ limited Cox to unskilled work, defined as "work which needs little or no

judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R.

§ 404.1568(a).

Vocational tests were administered to Cox in August 1989.  He placed at the third grade

level in word recognition and spelling.  Cox could correctly spell the words cat, run, arm, train,

and shout; he could not spell correct, circle, heaven, ruin, believe, or suggestion.  Cox could

correctly read the words milk, city, tree, form, and stretch; he could not read theory, contagious,

or grieve.  There is no evidence that Cox's reading ability has deteriorated over the years.  He had

many years of solid work history in spite of his learning disability.

Cox is far from illiterate.  The ALJ's limitation to unskilled word adequately accounts for

Cox's reading difficulties.

IV.     Vocational Testimony

Cox contends the ALJ relied on testimony from the vocational expert which was

erroneous in several respects.  The Commissioner concedes the ALJ should not have relied on

the jobs of electronic assembler and patient transporter because the Dictionary of Occupation

Titles ("DOT") descriptions for these jobs do not comply with the limitations in Cox's residual

functional capacity.  The Commissioner maintains, however, that the remaining job of sandwich

maker does fall within Cox's abilities.

The ALJ adopted treating pulmonologist Dr. Keppel's opinion and required Cox to avoid

"environmental irritants, i.e., air pollution, hot and humid air, solvents, and other severe

irritants."  Tr. 23.  Cox maintains the ALJ erred in failing to incorporate into the vocational

expert's hypothetical a limitation that Cox must avoid all air pollution.

The Commissioner contends the ALJ's limitations of avoiding various environmental

irritants is adequate.

I agree with the Commissioner that the vocational expert's testimony is fairly interpreted

to mean that a worker could not avoid air pollution in Cox's past newspaper work, rather than in

the world in general.  Few places have completely pure air.  Dr. Keppel's opinion did not

quantify the amount of air pollution that would bother Cox.  Cox told some medical providers

that he is bothered by vehicle fumes when he travels downtown.  The ALJ's statement of the

limitations concerning air quality are sufficient to implement Dr. Keppel's opinion.

Cox contends the vocational expert erred by testifying that the hypothetical claimant

could work as a sandwich maker when the hypothetical limited the person to unskilled work with

little public contact.

The Commissioner claims the DOT description for a sandwich maker does not preclude a

counter person taking the order and passing it to the sandwich maker, thus satisfying the

limitation of little public contact.

The DOT includes in the definition of a sandwich maker, DOT 317.664-010, as a person

who prepares sandwiches to individual order of customers and receives sandwich orders from

Page 21 - OPINION AND ORDER

customers.  The definition does not discuss whether the sandwich maker always receives the order directly from the customer, which would be precluded by Cox's limitation to little public contact, or instead receives the order from a counter person, either in writing or orally.  Cox's reading skills are not so limited that he would have trouble reading sandwich orders.  Restaurants and sandwich shops come in all types of setups as far as who takes the order and who makes the sandwiches.  The vocational expert testified that there are 50,000 sandwich maker jobs nationally and 660 jobs in Oregon.

The Commissioner must prove that appropriate work exists in significant numbers in the region in which the claimant lives or in several regions of the country.  Beltran v. Astrue, 676 F.3d 1203, 1206 (9th Cir. 2012).  The Ninth Circuit does not have a bright line rule for what constitutes a "significant number."  An ALJ errs in finding a significant number of jobs if the jobs are "very rare" or generally unavailable to the claimant due to his limitations.  Id.

There is no vocational expert testimony here on the number of sandwich maker jobs in which the person works in conjunction with a counter person to take the order.  I see no reason to remand this case to take testimony on that issue when there are 50,000 sandwich maker jobs nationally.  I cannot believe the testimony would establish that such jobs are very rare.  Any such error is harmless.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless if it "was inconsequential to the ultimate nondisability determination").  Moreover, the vocational expert testified that sandwich maker fit the hypothetical, which included the limitation of little public contact, and the expert's testimony did not contradict the DOT.  The ALJ may rely on the testimony of the vocational expert.  Wright v. Massanari, 321 F.3d 611, 616 (9th Cir. 2003).

Page 22 - OPINION AND ORDER

Accordingly, I conclude the ALJ did not err in relying on the vocational expert testimony concerning sandwich makers.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____5th_____ day of September, 2012.


         /s/ Garr M. King_____
        Garr M. King
        United States District Judge